# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

### COLUMBIA DIVISION

LAURIE V. CALDWELL,    )
   )
             Plaintiff,    )    Civil Action No. 3:09-218-JFA -JRM
   )
v.    )
   )    **REPORT AND RECOMMENDATION**
SOUTH CAROLINA LAW    )
ENFORCEMENT DIVISION,    )
   )
             Defendant.    )
_____)

Plaintiff, Laurie V. Caldwell ("Caldwell"), filed this action on January 28, 2009. She alleges that her employer, the South Carolina Law Enforcement Division ("SLED"), discriminated against her because of her gender when it refused to promote her to lieutenant and retaliated against her when she complained of the perceived discrimination, all in violation of Title VII. SLED filed a motion for summary judgment on May 17, 2010. Caldwell filed an opposition memorandum on July 13, 2010. SLED filed a reply on July 26, 2010.

### Standard for Summary Judgment

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* Courts take special care when considering summary judgment in employment discrimination cases because states of mind and motives are often crucial issues. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir.), *cert. denied*, 484 U.S. 897 (1987). This does not mean that summary judgment is never appropriate in these cases. To the contrary, "'the mere existence of <u>some</u> alleged

factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.'" *Id.* (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

In this case, SLED "bear( ) the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If SLED carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." *Id.* at 718-19 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Id.* and Doyle v. Sentry Inc., 877 F. Supp. 1002, 1005 (E.D.Va. 1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits [*see* Fed. R. Civ. P. 56(e)], depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. Baber, citing Celotex Corp., *supra*. Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corporation, 12 F.3d 1310, 1316 (4th Cir. 1993) and DeLeon v. St. Joseph Hospital, Inc., 871 F.2d 1229, 1233 (4th Cir. 1989), n.7. Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. Martin

<u>v. John W. Stone Oil Distrib., Inc.</u>, 819 F.2d 547 (5th Cir. 1987) and <u>Evans v. Technologies</u> <u>Applications & Services Co.</u>, 875 F. Supp. 1115 (D.Md. 1995).

**Facts**

The facts, either undisputed, or according to Caldwell as the non-moving party, with all reasonable inferences therefrom, to the extent supported by the record, are as follows:

1. Caldwell is a female.

2. Caldwell has been employed by SLED since 1986 and became a special agent in 1988. She has progressed to the rank of Special Agent III.

3. Robert Stewart was Chief of SLED ("Chief Stewart") during the times relevant to this action.

4. In 1993 the General Assembly created, and SLED established, a Child Fatalities Unit to investigate child fatalities on a statewide basis. Lt. Patsy Habben (now Lightle) ("Lightle") was selected to supervise the new unit.

5. In 1996 Caldwell sent Lightle an anonymous electronic message (Bible verses) which Lightle considered threatening. After an investigation was begun, Caldwell admitted to sending the message and received a reprimand.

6. In 2006, the General Assembly created a Vulnerable Adult Unit at SLED to investigate elder abuse. Chief Stewart elected to establish a Special Victims Unit ("SVU") to encompass the Child Fatalities and Vulnerable Adults Units to be supervised by a newly appointed captain.

7. Lynn Iris Hutto ("Hutto"), SLED's Human Resources Director, explained the promotional process during her deposition:

a. When a vacancy or promotional opportunity arises, Human Resources ("HR") is notified;

b. HR prepares and publishes an announcement;

c. A list of applicants who are minimally qualified, together with relevant portions of their personnel files or other information, is prepared by HR;

d. A diverse selection panel of five people who have received training from the State Office of Human Resources is assembled by HR;[1]

e. A chairperson for the selection panel is named by the Chief or other high ranking SLED official;

f. The chairperson convenes the selection panel which reviews the applications and materials complied by HR;

g. The selection committee interviews and rates the applicants using a standardized package including scoring sheets prepared by HR;

h. The chairperson summarizes the scoring sheets and returns the results and documents to HR;

i. HR determines the top 50% of the applicants based on the scoring from the selection committee and forwards those names in alphabetical order without the scoring information to the Chief;

j. The Chief consults with appropriate SLED supervisors and makes a

---

[1]There is evidence in the record that on some occasions a SLED official, and not HR, has named the members of the selection panel.

selection;

k.  The Chief then sends out an announcement of the final decision.

(Hutto Dep. 15-16).

8.  Caldwell and Lightle applied for the Captain's position, i.e., "Special Agent in Charge of the Special Victims Unit." Both were on the list forwarded to Chief Stewart from the selection process. Chief Stewart selected Lightle on June 22, 2006. (Hutto Dep. 29 and Ex. 5).

9.  On the same day, June 22, 2006, Chief Stewart sent Hutto a memorandum requesting that HR "post...a promotional opportunity for two (2) Supervisory Special Agents (Lieutenant positions) in the Special Victims Unit, (one for Vulnerable Adult Abuse and one for Child Fatality)." (Hutto Dep., Ex. 6).

10. Caldwell applied for both lieutenant positions in SVU. Lightle served as chairperson of the selection panel. The above process was followed and Caldwell's name was presented to Chief Stewart for both positions. Two males were chosen: David Lawrence for Vulnerable Adults and James "David" Belk for Child Fatalities. (Hutto Dep., 12-15).

11. On August 21, 2007, both lieutenant positions for SVU were again posted for promotional opportunity. (Hutto Dep., Ex. 17).

12. Caldwell again applied for both positions.

13. Lightle served as chairperson of the selection panel. Also serving were Captain Eleanor Savage, Captain Ira Jeffcoat, Lieutenant David Belk, and Lieutenant Erwin Williams. The applicants were interviewed and scored. (Pl.Dep. 75-86; and Ex. D).

14.    Caldwell was not on the list of the top 50% of the applicants forwarded to Chief Stewart by HR. (Caldwell Dep., Ex. M).

15.    Two males, Howell "Holly" Siniard (Vulnerable Adults) and Gregg Shockley (Child Fatalities), were named as lieutenants for SVU in September of 2007.

### Discussion

Caldwell's broad complaint alleges gender discrimination and retaliation. In addition to the claim of failure to promote based on gender, Caldwell alleges that "there was a glass ceiling at SLED which prohibited female employees from promotional opportunities and advancement within the agency." (Complaint, ¶ 7). She also alleges that "females are paid less in salary and are treated with less respect than male employees, particularly at the agent and top supervisory levels of the agency where an endemic and pervasive policy of gender discrimination persists." (Complaint, ¶ 13). With regard to retaliation, Caldwell alleges that "(o)nce the plaintiff complained of preferential treatment accorded male counterparts, she began to be treated even more differently, and while praised for her efforts and job performance has remained at her investigative level and offered no opportunities for financial or grade promotions...." (Complaint, ¶ 17).

### 1. Gender Discrimination

#### a. Scope of Administrative Charge

Before filing a Title VII complaint in the United States District Court, a plaintiff must first exhaust his administrative remedies. *See* 42 U.S.C. § 2000e-5(b) and Bryant v. Bell Atl. Md. Inc., 288 F.3d 124, 132 (4th Cir. 2002). The exhaustion requirement "serves the complementary goals of providing employers fair notice of alleged discrimination and of enabling the EEOC to pursue a reconciliation between the disaffected employee and his employer." Carter v. Rental Unif. Serv. of

Culpeper, Inc., 977 F. Supp. 753, 758 (W.D.Va. 1997). Generally, a federal district court does not have subject matter jurisdiction under Title VII of claims omitted from the EEOC administrative charge. Dennis v. County of Fairfax, 55 F.3d 151, 156-57 (4th Cir. 1995). The court must liberally construe the EEOC charge, because "lawyers do not typically complete the administrative charges." Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir.1996).

The "Charge of Discrimination" filed by Caldwell with the South Carolina Human Affairs Commission ("SCHAC") is a part of the record. (*See* Pl.Dep., Ex. 8). In that charge she stated:

I. PERSONAL HARM: I was denied two promotions for Lieutenant positions on or about September 7, 2007.

II. RESPONDENT'S REASON(S) FOR ADVERSE ACTION: The agents promoted to the Lieutenant positions were qualified.

III. COMPLAINANT'S CONTENTION(S): I contend that I was more qualified than the both male employees who got the jobs. I have actual job-related experience and education; to include, 15 years experience in the investigations of mental health/special needs individuals and in the field of child fatalities. I was denied a promotion on another occasion, and a less qualified male employee got the job. I also have more seniority than all of the men promoted.

IV. DISCRIMINATION STATEMENT: I believe I was discriminated against because of my sex (female) in violation of the South Carolina Human Affairs Law, as amended, and Title VII of the United States Civil Rights Act of 1964, as amended.

SLED asserts that Caldwell only raised the 2006 and 2007 failures to promote to lieutenant in SVU in the charge and that all other claims contained in the complaint (i.e., glass ceiling, disparate discipline, and discriminatory pay) should be dismissed on this basis. Caldwell has not responded

to this argument. Therefore, the undersigned concludes that this portion of SLED's motion for summary judgment should be granted.

    b. <u>Time Bar</u>

    Additionally, SLED contends that Caldwell's claim relating to her unsuccessful applications for the lieutenant positions in SVU in 2006 should be dismissed because she did not file a timely charge of discrimination as to those decisions.

    As noted above, Title VII requires a charge of discrimination with either the Equal Employment Opportunity Commission or the appropriate state agency before filing a complaint in this Court. Since South Carolina is a deferral state, the charge of discrimination must be filed within 300 days of the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1) and <u>Jones v. Calvert Group, Ltd.</u>, 551 F.3d 297, 300 (4th Cir. 2009).

    The record before the Court shows that Chief Stewart made the selections for the lieutenant positions on July 10, 2006. (Hutto Dep., Exs. 12 and 16). Caldwell's charge of discrimination is dated December 7, 2007, well over a year after the 2006 promotions. (Hutto Dep., Ex. 8). Caldwell has not responded to SLED's argument that her claim for failure to promote for the lieutenant positions in 2006 is barred because her charge of discrimination was untimely. The undersigned concludes that even though Caldwell indirectly referenced the 2006 promotions in her charge of discrimination, any claim with respect to those positions is barred because she failed to file her charge of discrimination within 300 days of her rejection.

    Therefore, Caldwell's claim that SLED failed to promote her based on her gender is limited to her applications in 2007.

c. The 2007 Promotion - Prima Facie Case

Caldwell alleges that SLED discriminated against her based on her gender because she was not promoted to the position of lieutenant in SVU. Title VII makes it "an unlawful employment practice for an employer--(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may proceed under ordinary principles of proof using direct or indirect evidence, or, in the absence of direct proof[2] of a defendant's intent to discriminate, a plaintiff can employ the scheme outlined in McDonnell Douglas v. Green, 411 U.S. 792 (1973) to establish a prima facie case of discrimination.

A plaintiff establishes a prima facie case of discriminatory failure to promote by showing:

(1)     she is a member of a protected group,

(2)     she applied for the position in question,

(3)     she was qualified for the position, and

(4)     she was rejected under circumstances giving rise to an inference of unlawful discrimination.

Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005). The burden of establishing a prima facie case is not an onerous one. Texas Dep't of Cmty. Affairs v. Burdine, 450

---

[2]Caldwell has not presented any direct evidence of discrimination. The Fourth Circuit defines "direct evidence" as evidence that the employer "announced, admitted, or otherwise indicated that [the forbidden consideration] was a determining factor..." Cline v. Roadway Express, Inc., 689 F.2d 481, 485 (4th Cir. 1982) (citing Spagnuolo v. Whirlpool Corp., 641 F.2d 1109, 1113 (4th Cir.), cert. denied, 454 U.S. 860 (1981)). In other words, direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir. 1995).

U.S. 248, 253 (1981). Under the familiar burden-shifting framework of the analysis for Title VII actions, once the plaintiff carries the initial burden of proving a prima facie case, the employer bears the burden of articulating a legitimate, non-discriminatory reason for the challenged employment decision. <u>McDonnell Douglas</u>, 411 U.S. at 802. If the employer provides the required evidence of a non-discriminatory reason for the action, a plaintiff must then show that the proffered reasons were a pretext for discrimination. *Id.* at 804; *see also* <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 147 (2000).

SLED contends that Caldwell cannot establish a prima facie case of gender discrimination because she was not "qualified" for the lieutenant positions in SVU. SLED concedes that Caldwell was found minimally qualified by HR at the first stage of the process, but argues she was unqualified because she was not on the list submitted to Chief Stewart after the screening process. SLED's argument is based on two cases: <u>Davis v. Napolitano</u>, 2010 WL 1403936 (E.D.Va.) and <u>Bailey v. Anne Arundel County, Maryland</u>, 259 F.Supp.2d 421 (D.Md. 2003) *aff'd*, 81 Fed.Appx. 798 (2003). In both cases the plaintiff was found unqualified because, after a screening process similar to the one used by SLED, the plaintiff's name was not on a list submitted to the appropriate official for selection. The rationale in these cases was that the selecting official never had the opportunity to consider the plaintiff for promotion.

Caldwell appears to argue that summary judgment is foreclosed based on the holding of <u>Wesley v. Arlington County</u>, 354 Fed.App. 775 (4th Cir. 2009). In that case the Fourth Circuit reversed the district court's order granting summary judgment to defendant. However, the plaintiff in <u>Wesley</u> had gone through a promotional screening process, had been found qualified by the screening panel, and her name was included on the list of qualified applicants submitted to the

selection official. The Fourth Circuit held that, because the plaintiff had been found qualified by the screening panel, she had established a prima facie case of discrimination with regard to the promotion. <u>Wesley</u> actually undermines Caldwell's argument because, as discussed above, she was not found qualified by the screening panel. Therefore, the undersigned concludes that Caldwell's arguments with respect to her qualifications, relative to the individuals who were selected, are without merit in determining whether or not she has established a prima facie case of discrimination.

        d. <u>Pretext</u>

SLED argues that even if Caldwell could establish a prima facie case of discrimination, it has articulated a legitimate, non-discriminatory reason for its decision which Caldwell cannot show is pretextual. The reason proffered by SLED is that Caldwell was not on the list of the top 50% of applicants which was submitted to Chief Stewart.

Caldwell offers the same reason in her pretext argument that she does in attempting to establish a prima facie case, i.e., her name being omitted from the list of qualified applicants sent to Chief Stewart was itself discriminatory. Caldwell offers several arguments to support her position that the selection panel discriminated against her by not including her in the top half of the applicants in 2007. (Pl.Mem., pp. 9-11). First, Caldwell challenges Hutto's testimony based on SLED's written policy that selection panel members are chosen from a rotational list. She cites the deposition testimony of Lawrence Gainey, Jr. (Gainey Dep., 56) and Paul Grant (Grant Dep., 18 and 35) that in the past they had chosen their selection panel members when they had acted as chairperson. Neither Gainey nor Grant served on the 2007 selection panel.[3]

---

[3]SLED's policy is an exhibit to Chief Stewart's deposition. The policy does not appear to mandate that the selection panel be chosen by HR.

Caldwell also argues that "the panel chair possess the ability to sway and influence the other panel members scoring" because "(p)anel members can only score a candidate one rating off the panel chair's rating."[4] (Pl.Mem., p. 9). She cites the deposition testimony of Paul Grant (Grant Dep., p. 36) and an affidavit of David Lawrence (Lawrence Aff., p. 6). Again, neither Grant nor Lawrence was a member of the 2007 selection panel. Grant did testify that it would be possible for the chairperson to influence the scores of the other panel members by starting off with a high [or a low] score. However, there is nothing in the record to suggest that another member of the selection panel could not do the same thing. Grant and Lawrence stressed the need for consistency in scoring. Lightle also testified that the scoring should be consistent. However, she stated the scoring was done after the interview of the applicant had concluded and a "roundtable discussion" of the applicant by the members of the selection panel had taken place. (Lightle Dep., 122-123).

Caldwell further argues that the 2007 selection process was discriminatory because her score for "Work History/Experience" was lower in 2007 than it was when she applied for the captain's position which Lightle received. Caldwell argues that discrimination is the only logical explanation for the decrease. First, the undersigned notes that "Prior Mgt/Supervisory Experience, Specialized Training and Education" is one component of the "Work History/ Experience" category. Another component of the "Work History/Experience" category is based on information provided by HR: "Past 3 performance evaluations, commendations and/or disciplinary actions." Caldwell's argument fails on this point because such information could change between the two applications. Further, as

---

[4]The scoring sheets provided by HR allow each panel member to score an applicant from 5 (highest) to 0 (lowest) in various categories. Caldwell appears to argue that if the chairperson gave an applicant a 2 in a category the other panel members were required to either agree, giving the applicant a 2, or disagree by giving the applicant a 3 or 1.

Lightle explained each applicant was scored relative to the other applicants and there were different members of each selection panel. (Lightle Dep., 101-102).

The inference argued by Caldwell is that the chairperson of the 2007 selection panel, Lightle, discriminated against her because she is a woman. Caldwell and Lightle are both women. "(A)n inference of discrimination is highly unlikely where the actor is in the same protected class as Plaintiff." Davis v. Napolitano, *supra* at *7 quoting Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1471 (11th Cir. 1991). Further, any animosity toward Caldwell by Lightle is best explained by the earlier "Bible verse" incident which according to Lightle showed a lack of judgment on the part of Caldwell.

Caldwell has produced no evidence, other than Lightle's deposition testimony, from the officials who served on the 2007 selection panel. Her arguments are based on evidence from officials who served on other selection panels. This evidence does not show that the reason offered by SLED was a pretext for discrimination.

### 2. Retaliation

Caldwell alleges that SLED retaliated against her because she engaged in protected activities. To establish a prima facie case of retaliation, it must be demonstrated that:

(1) the employee engaged in protected activity;

(2) the employer took some adverse employment action against the employee; and

(3) a causal connection existed between the protected activity and the adverse action.

*See* Anderson v. G.D.C., Inc., 281 F.3d 452, 458 (4th Cir.2002); Causey v. Balog, 162 F.3d 795, 803 (4th Cir.1998); Carter v. Ball, 33 F.3d 450, 460 (4th Cir.1994). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence of a legitimate, non-retaliatory reason

for the adverse action. <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. at 254. If the defendant meets this burden, the plaintiff must show by a preponderance of the evidence that the proffered reason was pretextual, and that the adverse action was imposed because the plaintiff engaged in protected activity. <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

A plaintiff need not have filed a formal complaint with the Equal Employment Opportunity Commission or a state deferral agency to engage in a protected activity. Complaints to supervisory or management employees concerning harassment or discriminatory treatment as well as informal complaints, filing of internal grievances, and complaints to an agency are included within the definition of protected activity. <u>Warren v. Halstead Industries, Inc.</u>, 802 F.2d 746, *cert. denied*, 487 U.S. 1218, 108 S.Ct. 2872, 101 L.Ed.2d 907 (1988) and <u>Mitchell v. Baldrige</u>, 759 F.2d 80 (D.C.Cir.1985).

The Fourth Circuit, in <u>Von Gunten v. Maryland</u>, 243 F.3d 858 (4th Cir.2001), addressed what an "adverse employment action" is for purposes of a Title VII retaliation claim. Although "ultimate employment actions" are adverse employment actions, a Title VII retaliation claim does not require an ultimate employment action. In <u>Burlington Northern & Santa Fe R.R. Co. v. White</u>, 548 U.S. 53, 60, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006), the Supreme Court held that a plaintiff is not required to show "an adverse effect on the 'terms, conditions, or benefits' of employment" to support a retaliation claim (quoting <u>Von Gunten</u>, 243 F.3d at 866). It is sufficient if the plaintiff shows that a reasonable employee finds the employment action "materially adverse" or likely to "dissuade a reasonable worker from making or supporting a charge of discrimination." *Id*. at 57 (quoting <u>Rochon v. Gonzales</u>, 438 F.3d 1211, 1219 (D.C.Cir.2006)).

SLED asserts that Caldwell's retaliation claim is limited to events occurring after she filed her SCHAC charge concerning the 2007 promotion and that based on the facts in the record she cannot show that she suffered a materially adverse action after that date. Caldwell has offered no argument in response to SLED's assertions. Therefore, she has not established a prima facie case of retaliation.

## Conclusion

Based on the foregoing, it is recommended that Defendant's motion for summary judgment be **granted.**

_____
Joseph R. McCrorey
United States Magistrate Judge

Columbia, South Carolina

October 25, 2010